Thank you and good morning, your honors. I would like to reserve two minutes for rebuttal. My name is Mukund Rati. I represent Ms. Cody Benson. This court should vacate the convictions and remand for a new trial because the jury may have convicted Ms. Benson for having a purpose of salary maintenance in executing a wire fraud scheme. The jury acquitted Ms. Benson on the only count in which the government had charged that Ms. Benson pocketed money other than her salary as part of the scheme, but convicted her on two other counts after a trial during which the government repeatedly argued that Ms. Benson's purpose, and that was the word the jury was given in the instructions, was to obtain her salary. The government not only argued this throughout its opening and closing arguments, but also repeatedly gave the jury evidence in the form of monthly vouchers, which listed Ms. Benson's salary as a separate line item, and the government argued to the jury through its witnesses and during opening and closing that those vouchers represented the grant funds that were being fraudulently obtained. Counsel, who was Ms. Benson's employer? Ms. Benson's employer, your honor, was jointly between WICFA, the nonprofit, and the State Attorney General, which funded the nonprofit. Both shared power over Ms. Benson's working conditions, and the government itself, on pages 22 and 23 of its brief, lists the many ways that the State Attorney General exercised control over Ms. Benson's salary and her working conditions. They had to approve raises. Did the money first go to the organization and then go to Ms. Benson? At times, your honor, and at other times it did not. It depended on the preference. Did all of the money that came from the state go to Ms. Benson? No, your honor. So some of it went to the organization and then was sent somewhere other than to her for her salary? Correct, your honor. So how does that mean that she fits into the salary? I mean, that's your problem, as I see the case. Yes, your honor, and the jury was told that Ms. Benson's purpose for the entire scheme, both for her salary and for the other grant funds that went to WICFA, was to ultimately obtain her salary. I understand that, but that's not necessarily mean that she fits within the category of she's just not doing her work in order to get salary. I mean, the cases I see, the person's just a plain old salary and the only money is at stake is the money that comes in as salary. And, your honor, I think that's a question that could have been posed to the jury with a properly worded instruction for the jury to determine was Ms. Benson's purpose that salary which was going to her or was there some independent purpose such as the non-salary grant funds that were going to WICFA or to others? So why is it a purpose question rather than simply a factual question? That is to say, the cases we've got where the defense is good, the person gets all of the money at issue in terms of salary rather than part of the money at issue. How do you distinguish? How do you fit yourself into the established cases? In those cases as well, your honor, in particular Yates and Skilling, there were other beneficiaries of the fraud scheme beyond the defendants. So in Yates, for example, one thing that this court noted was that the defendant's scheme created a better regulatory picture for the bank. So the bank benefited itself independent of the salary that Hine and Yates, the defendants in that case, ultimately got. Also in Yates, there were customers who had delinquent loans with the bank and the defendants schemed to make those loans appear they were up-to-date. That again benefited those customers, it benefited the bank, and ultimately benefited the defendants by them obtaining their salary. But it was not the case in Yates that the only money involved, the only money that was fraudulently obtained, was the salary and that went to the defendants. The same thing was true in Skilling. Let me understand, the money that was fraudulently obtained in those cases went where? You say some of it did not go to salary? Yes, your honor. So tell me more about that. Some of it went to the bank, your honor, because investors and regulators were misled into believing the bank had a better financial picture than it actually did. So the bank was able to benefit from continuing business. Some of the customers benefited because the defendants arranged for those loans to be paid off by obtaining money fraudulently and putting it towards those loans. Now from the government's point of view in that case, the defendants ultimately benefited from that creating of a better picture through fraud by obtaining their salaries. But there was a lot of money moving around as part of the scheme and not every dollar of money actually went to those defendants. Counselor, can you tell me what the object of the fraud was here then? The object of the fraud, your honor, as the jury found it, could have been salary and that is why a jury instruction telling the jury that Ms. Benson's purpose, the object, motive, whatever word we use, could not have been salary. The jury should have been told that and then the jury could have decided was the purpose, object, motive here salary or was it something else? The government of course insists the object, motive, purpose was not salary but that's not something for the government to decide. That was a question that was put to the jury by a jury instruction that told the jury if Ms. Benson had a purpose of obtaining money or salary and she did so through material misrepresentations and so on, then she committed wire fraud and you should convict her. The jury should have also been told but the purpose cannot be obtaining her salary. And I just wanted to note, your honor, there is a similar factual situation in Skilling. There too it was not the case that the only money fraudulently obtained was the defendant's salary. Skilling involved Enron. It was a huge financial conspiracy and fraud case. There were taxpayers that were defrauded, there were investors that were defrauded, there were government regulators that were defrauded. One of the things the Supreme Court emphasized in Skilling was that Enron benefited because its stock price went up and again that's a natural consequence of the defendant's scheming to create a better financial picture whether it's of Enron, whether it is of the Bank and Yates, whether it's WICFA here. Because of the scheme to misrepresent the financial state of the employer and of the organization, various entities benefited as well as the defendant through obtaining salary and that benefit to the defendant, Ms. Benson, through her salary was something the government emphasized throughout the Were those other, as it were, channels for the money in the Skilling case and in the Yates case, were they part of the indictment that was challenged? I mean, that was at issue? Yes, your honor. My understanding in Skilling, for example, was the indictment gave three different objects of the scheme. It gave honest services, which was ultimately the salary maintenance part that the Supreme Court disapproved of. The Skilling indictment and the government's arguments also charged that the defendants were responsible for securities fraud and for fraud related to misleading investors. So there were all of these different arguments made about what the object, purpose, motive of the scheme was. The Supreme Court found that because one of those was salary, it could not be determined that the jury would not have convicted on that basis and that's why the conviction was vacated. Let's go back to the joint employer for a second. WCBA hired and fired. It held the employment records. It determined benefits. The AGO wasn't micromanaging. So I don't really understand the argument on joint employer. I will say, your honor, on page 23 of the government's brief, and both sides cite the record for this, 10 ER 1835 to 36, the AGO did, under Ms. Benson's employment contract, have authority to approve any termination for cause. It also evaluated her job performance. It oversaw her work conditions and her employment contract specifically says you must perform your job duties at the satisfaction and oversight of the Attorney General. At the end of the day, also, your honor, this court's employment law cases, such as Bonnet, the one case both sides have submitted, said the court should look at the whole picture, not merely the label, and Bonnet also emphasized that the joint employer there, like the Attorney General, had direct and extensive control over the finances of the organization, and that gave it control over the employee. So again, the Attorney General had, every month, control over not just salary, but over every other expense, and it exercised that line item by line item. So counsel, I just want to clarify something. I feel like you read Yates much broader than I do. So tell me, does any percentage of it going to salary meet Yates? Your honor, I think ultimately that would be for the jury to decide. If there is some foundation and evidence to show that the object or purpose or motive is salary, then the jury should be instructed you may not convict on that basis, and then the jury can decide how much of this is really about salary, or is there something independent enough that we can convict on that basis. Before I sit down, your honor, I also just want to make sure I say this error was not harmless, and there's a quote in Yates that I think goes directly to it. The court there noted that the instruction did nothing to define something of value to preclude conviction under the government's invalid theories. Here, too, the jury was just given a blanket instruction, you may convict if there was a purpose of obtaining money or property, and again, the government argued throughout opening and closing that that purpose was salary, noting, for example, that Ms. Benson needed to make it seem like WICFA was working so she could live in Italy, collect her salary and benefits, and the error was therefore not harmless. Thank you. Thank you. Good morning, Ms. Chung. Good morning, your honors. May it please the court, this is Yuna Chung for the United States. Your honors, this case is about grand frauds. The overarching object of the fraud scheme was securing grant funds from the state attorney general's office, the grantor, to keep the appellant's employer, WICFA, in operation. The appellant accomplished this by submitting false invoices to the attorney general's office for reimbursement. This is garden variety fraud. This case is not premised on a salary maintenance theory of fraud. Her salary was simply a byproduct of the overarching scheme to secure grant funds, and this becomes evident when you look at the indictment to see how the government charged this case. The indictment in ER 127 charges the defendant with submitting fraudulent vouchers seeking over $63,000 in reimbursement for expenses not incurred. Count 3, the other count at issue, charges the defendant with submitting two fraudulent invoices to the attorney general's office seeking $66,400 in reimbursement. And looking at the verdict form and comparing the verdict form to the indictment, you see that the verdict form mirrors the charges that the government brought. The verdict form, which is in SCR 2-3, asks the jury to decide whether the defendant submitted the voucher seeking reimbursement for over $63,000. And then for count 3, the verdict form asks the jury to decide whether the defendant submitted a voucher seeking $66,400 in reimbursement. Nowhere in the verdict form does the government or the court ask the jury to decide whether salary was something that the defendant fraudulently obtained. Well, yeah, that's the problem according to the other side. I mean, that's not the defense, that's the problem. Tell me how much money went to her, of the money that she obtained, went to her salary, and how much of it went for other things? The vast majority of the money went to other things because... You say the vast majority. Do you have a number? I don't have a number, Your Honor, but the defendant's salary was about $70,000, a little over $70,000 in a year, and the grant fund was over $300,000. Over how long? $300,000. Over how long a period? $300,000 every year. Okay. So to that point, Your Honor, the grant fund went to support the appellant's employer's entire operation, everything that this employer did. It also went to supporting the salaries of all the other employees of that nonprofit. Salary maintenance can't be about maintaining somebody else's salary, which the grant funds did. And this case is different from Yates. If you look at the verdict form in Yates, the jurors there were asked to decide a general question of whether the defendants were guilty of committing a conspiracy to commit bank fraud. So one could argue that it is unclear from the verdict form whether the jurors decided that they were guilty because of this salary maintenance theory. But the verdict form in this case makes clear that the jurors decided that the defendant was guilty of submitting false invoices. Speaking of grants in general, if even a portion of grant funds goes to a grantee's employee's salary and that makes it so that the fraud is invalidated, then the government would never be able to bring a grant fraud case where a portion of the grants were used for any types of salary. And that cannot be the law. There is no law. Let me ask you this, counsel, based on that statement. What if of your $300,000 grant money per year, $200,000 or $250,000 of that was used for salary? Does that take it out or take it out of the fraud? It does not. It does not, Your Honor. Why not? Because grant funds, if you seek grant funds from a grantor, it is fraudulently obtaining money from a third party. It is not fraudulently obtaining money from your employer. So answer then, your friend on the other side said that they were co-employers. They are not co-employers. No case that the defendant has not cited any cases, the government has not found any case where a grantor was considered to be an employer or a joint employer, as Your Honor mentioned. And the WICVA, the appellant's employer had right to fire the employee unless it was for cause. But the Attorney General's Office did not have any authority to fire the appellant because the appellant was not the Attorney General's employee. So if you go back to why a salary maintenance theory of fraud is invalid, it's because the Supreme Court held that an employer's intangible right to employee's honest services is not a property right recognized by the federal fraud statute. But grantors, like the Attorney General's Office, the victim here, they have a property right to grant funds. And that right is not extinguished just because a grantee used a portion of the grant funds to pay its employee. That cannot be the law. And the jury instructions, Your Honor, the court, the district court is not required to give a jury instruction that is arguably correct in the abstract. A lot of instructions would be correct. A lot of things are not money or property. The moon is not money or property. But the district court is not required to give a list of things that the money or property is not if that does not relate to this case. This case is about grant fraud. So introducing the concept of salary into this would confuse the jury. So the district court was correct in not providing this jury instruction. If the court does not have any further questions, the government would like to wrap up by stating that the government did not charge a salary maintenance theory of fraud. It charged the defendant for grant fraud. And that was the evidence that the government proffered at trial. And that was what was proven at trial. The defense states, the appellant states that the government argued in closing repeatedly that the salary was the defendant's goal in perpetrating this fraud scheme. That is incorrect. In a 20-page closing argument, an argument that spans 20 pages, the government mentioned salary only three times. So the overarching argument the government made in closing was that this scheme is about fraudulent invoices and the taking of grant funds fraudulently. And, Your Honor, the district court correctly declined to give this salary maintenance jury instruction because that is not what this case is about. And the convictions, therefore, should stand, Your Honors. Thank you. Thank you, counsel. Mr. Rothy. Two points as quickly as I can, Your Honors. Number one, the government said in closing she did this so that she could continue to get her cut of that grant money in the form of her salary and benefits. And this, ladies and gentlemen, is wire fraud. It could not be clearer as put to the jury that the government was asking it to convict her for her purpose of obtaining her salary. And number two, Your Honor, Bonet did involve funds that were only indirectly given to the ultimate recipient, and that's why they were found to be a joint employer. Thank you. Thank you. All right. Thank you, counsel. This matter is now submitted.
judges: FLETCHER, ALBA, Orrick